## MUTUAL LIFE INS. CO. OF NEW YORK v. TORMOHLEN et al.

### No. 7437.

Circuit Court of Appeals, Seventh Circuit.

March 10, 1941.

164

James M. Barrett, Jr., and Leigh L. Hunt, both of Fort Wayne, Ind., for appellant.

James P. Murphy, of Fort Wayne, Ind., Roscoe D. Wheat, of Portland, Ind., and Guy Colerick and Frank E. Corbett, both of Fort Wayne, Ind., for appellee.

Before SPARKS and KERNER, Circuit Judges and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff insurance company brought an action against the defendants pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, seeking a decree that it was no longer obligated to make disability payments to defendants under five policies of life insurance upon the life of Herbert V. Tormohlen.

In its complaint plaintiff alleged that since April 1, 1937, it was under no obligation to resume the payment of monthly disability benefits. The defendants answered that plaintiff was under an obligation to continue the payment of disability benefits, since the insured was totally and permanently disabled within the meaning of the provisions of the policies. The case was tried without a jury, the District Court found for the defendants and rendered judgment that Tormohlen was on April 1, 1937, and continually since, totally and permanently disabled within the meaning of the policies. To reverse the judgment plaintiff appeals.

Three of the policies involved were issued on June 13, 1926 and provided for monthly disability benefits in the event Tormohlen became totally disabled. The policies defined total disability thus: "Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation." Another policy was issued on November 10, 1923, and the fifth policy was issued on December 1, 1923. These also provided for disability benefits in the event Tormohlen became totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation.

The trial was commenced on May 9, 1939, and continued for 8 days. The record is voluminous, consisting of the testimony of 102 witnesses and a large number of exhibits and is in hopeless and irreconcilable conflict. Witnesses of equal respectability, so far as we know, testified in direct opposition. We have read and considered all the evidence which, divesting it of immaterial details and resolving conflicts therein in defendants' favor, discloses that at one time Tormohlen had been engaged in the practice of law, but later operated a chicken farm and hatchery at Portland, Indiana; that prior to 1932 Tormohlen was a healthy person, calm, coherent and fluent in his speech and active in the management of the Everlay Hatchery & Poultry Farm, employing 15 persons; that on October 14, 1932, he was injured in an automobile collision, necessitating hospitalization, and later, on November 7, 1932, suffered another injury, receiving a deep scalp wound at the margin of the nose and upward across the left side of his head, ending near the base of the skull. He also suffered contusion of the upper right chest and left hip, refracture of the right fibula and a brain concussion. This second accident confined him to the hospital for some time. After his discharge from the hospital he ceased the active management of the poultry business.

In due time he made proof of total and permanent disability and plaintiff paid the benefits provided in the five policies, continuing the payment of the benefits to April 12, 1937, on which date plaintiff claimed that the total and permanent disability had ceased.

After the accidents of 1932 Tormohlen became nervous, high strung, irritable, forgetful and at times cried. His speech was incoherent and unintelligent and he took no part in the management of the hatchery.

Medical evidence in defendant's behalf consisted of the testimony of four physicians and was as follows:

Dr. Keeling testified that on March 7, 1934, Tormohlen was extremely nervous, incoherent and had hand tremors. May 22, 1934 he was very nervous, unstable mentally, that condition continuing throughout 1936. During 1937 the hand tremors were worse and Tormohlen had difficulty controlling himself. On April 16, 1939, Tormohlen was extremely hoarse, had tremors of the hands and his conversation was disconnected. He testified that in his opinion Tormohlen's symptoms were real and not simulated; that in the past 7 years he had had occasion to see Tormohlen perhaps 150 to 200 times and that he was of the opinion Tormohlen was not capable of managing the hatchery.

On cross-examination Dr. Keeling testified that if it was true that Tormohlen had participated in the activities charged to him, then he was of the opinion that Tormohlen must have had some control of his mental faculties at the particular times and was able to engage in business at least part of the time.

Dr. Block examined Tormohlen on May 9, 1939, and testified that Tormohlen cried, was irritable and forgetful; that he had tremors in his hands and legs; that it was possible to simulate hand tremors but that Tormohlen was not simulating and was not able to practice law or do administrative or executive work of any kind.

On cross-examination he testified that his opinion might be swerved if Tormohlen, in the fall of 1938, transacted business with Sears, Roebuck & Company and talked rationally, coherently and intelligently.

Dr. Savage examined Tormohlen on April 27, 1939, and testified that Tormohlen was irritable, nervous, forgetful, confused and excited and had tremor of both hands. The witness was of the opinion that Tormohlen has been incompetent since the accidents and that he could not practice law, manage a chicken hatchery or carry on general administrative or executive work and that even if he assumed that Tormohlen had engaged in the activities enumerated in the hypothetical question, it would not change his opinion as to Tor-

mohlen's ability to practice law or perform regularly general administrative or executive work.

Dr. Harshman, a specialist in mental and nervous disorders, examined Tormohlen on April 20 and 21 and again on May 5, 1939. He testified that Tormohlen cried at times, had memory disturbances and hand tremors, was suffering from psychoneurosis and that his condition was permanent. The witness was of the opinion that Tormohlen was clearly incompetent and could not practice law or perform executive or administrative work. On cross-examination he testified it would change his opinion if it was true that Tormohlen had participated in the activities charged to him.

■ We think it is now well settled under the laws of Indiana that total disability, under insurance policies containing provisions such as are here involved, does not mean absolute physical inability or complete helplessness to transact any kind of business. The test is whether the condition of the insured is such as to prevent him from transacting all kinds of work pertaining to his occupation or profession. Commercial Travelers, etc. v. Springsteen, 23 Ind.App. 657, 55 N.E. 973; American Liability Co. v. Bowman, 65 Ind.App. 109, 114 N.E. 992; Great Northern Casualty Co. v. McCollough, 96 Ind.App. 506, 174 N.E. 103; Metropolitan Life Ins. Co. v. Schneider, 99 Ind.App. 570, 193 N.E. 690; Aetna Life Ins. Co. v. Huffstetter, 101 Ind.App. 355, 195 N.E. 598, and Prudential Ins. Co. v. Girton, 105 Ind.App. 52, 12 N.E.2d 379. And the question whether or not Tormohlen was permanently and totally disabled and unable to do any work or conduct any business for profit, was a question of fact for the District Court. Metropolitan Life and Prudential Life cases, supra. We are not the triers of fact, but merely reviewers of the action of the trial court and limited in our investigation to an ascertainment of the existence of substantial evidence sufficient to support the findings and where there is any competent evidence to sustain the trial court's findings, it cannot be disturbed on appeal unless we can say the findings are clearly erroneous. Rules of Civil Procedure, Rule 52, 28 U.S.C.A. following § 723c. We cannot say such is the fact in the instant case.

Plaintiff contends that the opinion evidence of John S. Hardy and William G. Reinhardt was incompetent.

The record discloses that Hardy had testified that he was engaged in the automobile business; that he has known Tormohlen for 15 years and had purchased chickens from Tormohlen prior to 1932; that he was acquainted with the hatchery and its equipment; that he had spoken to and observed Tormohlen since his accidents, the last occasion being three or four weeks prior to the trial; that in his conversations with Tormohlen he noticed that Tormohlen would stop, hesitate, hold his head and then resume the conversation; that Tormohlen's hands shook and he was nervous. The witness was then asked to consider the observations made in his conversations with Tormohlen and state whether in his opinion Tormohlen was capable of supervising a hatchery. The testimony of Reinhardt was somewhat to a like effect and both answered that Tormohlen was not capable of performing the duties of an executive in supervising a hatchery.

■ The usual function of a witness is to furnish facts from which the court may draw inferences, but there are situations in which a witness is permitted to give in evidence his own inference or opinion. State v. Reid, 204 Ind. 631, 640, 185 N.E. 449, 86 A.L.R. 1442. The general rule is that the opinions and conclusions of ordinary witnesses are not admissible in evidence for the reason that the court is quite as competent to draw conclusions from facts presented as are the witnesses themselves. Eckman v. Funderburg, 183 Ind. 208, 108 N.E. 577. In Indiana, a witness who is familiar with the facts, and who states them to the court, may express an opinion although he is not an expert, if the case is one in which it is proper to express an opinion. Bennett v. Meehan, 83 Ind. 566, 568, 43 Am.Rep. 78 and Carthage Turnpike Co. v. Andrews, 102 Ind. 138, 142, 1 N.E. 364, 52 Am.St.Rep. 653. In this case we doubt the competency of this evidence, but under the facts appearing, even if the opinions expressed were incompetent, they were not of sufficient importance to justify a reversal of the judgment.

■ The final point made by plaintiff is that the District Court erroneously assumed that the burden of proof on the issue of disability was upon the plaintiff. While it is true that the trial judge stated that the burden was on the plaintiff, we do not think, under the facts and circumstances in this case, it was reversible error. In

his opinion the trial judge stated: "Plaintiff contends that defendant [Tormohlen] is a malingerer; that his disabilities are simulated; that he is able to carry on and conduct the business of poultry raising." The trial judge then proceeded to discuss the evidence and said: "He [Tormohlen] is not utterly helpless, but in my opinion, is prevented by his bodily condition and mental disorder from engaging continuously in the poultry business or in the practice of law." The trial judge then added that "he is, in my opinion, under this evidence for all practical purposes, totally disabled from performing any work for compensation, gain or profit, and from following any gainful occupation with a reasonable degree of continuity."

To us it is clear from a fair reading of the opinion and the findings of fact, that the trial judge was firmly of the opinion that from all the evidence the defendants had established the fact that Tormohlen was totally disabled. That was the controverted issue of fact and the trial judge decided that issue in favor of the defendants.

Finding no reversible error, the judgment of the District Court is affirmed.