## MORGAN v. AETNA LIFE INS. CO.
### No. 9027.

Circuit Court of Appeals, Seventh Circuit.
Oct. 25, 1946.

Frederick P. Bamberger, Edmund F. Ortmeyer, and William P. Foreman, all of Evansville, Ind., for appellant.

T. Ralph Alsop, of Vincennes, Ind., H. B. Aikman, of Terre Haute, Ind., Alsop & Alsop, of Vincennes, Ind., and Aikman, Miller, Causey & Piety, of Terre Haute, Ind., for appellee.

Before SPARKS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

In a suit upon an accident insurance policy the insurance company appeals from a $4,260.68 judgment [1] in insured's favor. The judgment is predicated upon a finding by the trial court of permanent and total disability of insured, resulting from an accident.

The insurance company had issued the policy May 9, 1935, to James Morgan, "by occupation an Office Clerk—Office Duties Only." The policy provided for weekly payments of $20 for permanent and total disability arising from accident, in these terms:

"Or, if such injuries, directly and independently of all other causes, shall, within twenty days from the date of accident, wholly and continuously disable the Insured and prevent him from performing any and every duty pertaining to his occupation, the Company will pay weekly indemnity at the rate hereinbefore specified for the period of such continuous total disability, but not exceeding fifty-two consecutive weeks. After the payment of weekly indemnity for fifty-two weeks as aforesaid the Company will continue the payment of weekly indemnity of the same amount thereafter so long as the Insured shall be wholly and continuously disabled by such bodily injuries from engaging in any occupation or employment for wage or profit."

Two issues are presented:

(1) Has insured been *continuously,* and *permanently and totally disabled* by virtue of an accident in the course of his duties as office clerk? The question of continuity turns upon insured's return to the Company office intermittently for short periods of time from December 28, 1942 to August 1, 1943.

(2) Did the trial court err in granting disability recovery to the *date of judgment,* instead of to the date of commencement of suit?

Insured was employed by a dairy company, as a branch office manager. As such, his duties consisted of making reports, doing the banking, calling on wholesale customers, soliciting retail customers, going out with the drivers and checking their routes and checking their money and books, hiring employees, going to the post office, and the like.

On September 14, 1942, Morgan, while checking milk in storage, lifted a case of milk weighing about seventy pounds, four feet off the floor, and while doing so his foot slipped on the wet floor and he wrenched his back. This back injury is the source of the alleged permanent and total disability. Morgan was thirty-three years old at the time of the accident.

Morgan consulted a local doctor two days after the accident and a course of rest and heat treatment was prescribed. He did not return to the company's office, after the accident, until December 28, 1942. Thereafter, until August 1, 1943, he went to the office two or three times a week and stayed from ten minutes to an hour. While there he performed some duties of an advisory nature, and it is upon this service that the insurance company contends that there can be no holding of total (and *continuous)* disability, but rather partial disability, which would preclude recovery under the insurance contract.

A co-employee, hired by Morgan in 1943, testified to substantially the same facts as did Morgan, as to the work performed by Morgan in the early part of 1943.

Morgan was not replaced as office manager until August, 1943. Since leaving the dairy plant in August, 1943, he has done no work whatsoever.

In November and December, 1942, Morgan was in the Battle Creek Sanitarium. On August 4, 1943 he went to the Barnes Hospital in St. Louis, where he remained for a few days. He returned there in

---

[1] The judgment is constituted of these items: $466.70 for hospital, nursing, medical and surgical expenses; $3,454.28, weekly disability payments from September 14, 1942 to January 3, 1946, the date of judgment, plus $399.70, which is 6% interest from the date each payment became due.

October, when a laminectomy operation was performed to remove the protruding part of the disc between the fifth lumbar and first sacral vertebrae. He was discharged from the hospital November 5. The operation was evidently a failure and the evidence indicates that perhaps his existent disability could be cured if another operation were performed.

The medical testimony is not quite clear or in accord as to the extent, reality, or prognosis of insured's disability. There is some which is indicative of complete disability, some, that for the period he returned to work he was under only a partial disability, and some evidence that the history of pain had caused the insured to become practically a malingerer.

Morgan received compensation payments of $66 a month which he assigned to the Dairy Company. The Company in turn paid Morgan the $35 a week salary it had theretofore paid, which sum was increased to $45 weekly (the raise came, Morgan contends, when his expense account was shut off.) The weekly payments by the Company continued to the time of the trial. He explained the Company's payments thus:

"My employer knew of my financial condition when I was hurt. I explained it to him; it was impossible for me to get along. I have been with the company fifteen years, and they said they would send me a check every week. Whether that is salary or what it is, I don't know."

The record is not clear as to whether the compensation payments to Morgan were discontinued during the period of alleged partial disability.

(1) *Continuity and Totality of Disability.* While there is legitimate doubt as to the completeness of disability of Morgan from December 28, 1942 to August 1, 1943, when he went to the Company's office, two or three times a week, for periods of ten minutes to an hour, and performed "advisory" duties only, we conclude such service did not convert the theretofore existing permanent disability into a partial disability, or render the total disability non-continuous. There is ample evidence to support the trial court's finding of permanent and continuous disability. We are not impressed with the substantiality of the services rendered in these ten minutes or hourly visits two or three times a week. In comparison with the numerous duties of divers character theretofore performed by the insured, the post-accident services were inconsequential, and insured should not be penalized for having made the effort, by denial of recovery.

A careful survey of the precedent and text authorities shows a liberal construction of such policy provision as is here involved, so that mere triviality of service, or service negligible in character compared to the ordinary tasks performed, is not to be held to transform permanent disability into partial, or interrupt continuity of disability thereby precluding recovery. [2]

(2) *Date to which Damages Recoverable.* The trial court's judgment granted recovery not only to the date of commencement of suit, but to the date of judgment, and stated: "* * * the plaintiff is entitled to receive such further weekly benefits as may be due him under the terms of said policy of insurance during such time as the plaintiff is totally disabled."

[2] Cooley, Briefs on Insurance, p. 5538 (Also Supp. p. 789); Couch, Cyclopedia of Insurance Law, p. 5767, et seq.; Prudential Insurance Co. v. South, 179 Ga. 653, 177 S.E. 499, 98 A.L.R. 788, "When insured deemed to be totally and continuously disabled or unable to transact all business duties"; New York Life Co. v. Hubbell, 111 Ind.App. 631, 40 N.E.2d 352; Great Northern Casualty Co. v. McCollough, 96 Ind.App. 506, 174 N.E. 103; Pacific Mut. Life Ins. Co. v. Branham, 34 Ind.App. 243, 70 N.E. 174; Commercial Travelers' Mut. Acc. Ass'n v. Springsteen, 23 Ind.App. 657, 55 N.E. 973; American Liability Co. v. Bowman, 65 Ind.App. 109, 114 N.E. 992; Metropolitan Life Ins. Co. v. Heavener, 107 Ind.App. 695, 24 N.E.2d 813; Aetna Life Ins. Co. v. Huffstetter, 101 Ind.App. 355, 195 N.E. 598; Prudential Ins. Co. v. Martin, 101 Ind.App. 320, 196 N.E. 125; Metropolitan Life Ins. Co. v. Schneider, 99 Ind.App. 570, 193 N.E. 690; Prudential Ins. Co. v. Girton, 105 Ind.App. 52, 12 N.E.2d 379; Mutual Life Ins. Co. of New York v. Tormohlen, 7 Cir., 118 F.2d 163.

530

We conclude it was erroneous to grant recovery for any time after commencement of the suit, and so hold in view of the overwhelming authority in support of this conclusion.[3] Appellee cogently argues that we should consider the complaint amended to conform to the proofs, in compliance with Rule 15(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. But the obstacle to greater recovery does not arise out of any deficiency in pleading; it seems to be a matter of policy or substantive law that contracts providing for installment payments, the payment of which is predicated upon certain conditions precedent, can not be enforced until due, unless there be complete repudiation or renunciation of the contract, which is not the case here.

The judgment, as modified in accordance with this opinion, is

Affirmed.

[3] New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971; Trainor v. Mutual Life Ins. Co., 7 Cir., 131 F.2d 895; 29 Am.Jur., "Insurance," § 1170; 81 A.L.R. 392; 99 A.L.R. 1182; Kontovich v. United States, 6 Cir., 99 F. 2d 661. It is worthy of note that in the Trainor case, supra, the record discloses pleadings specifically praying recovery to date of judgment and also for the rest of insured's life.